Good afternoon, everyone. The case on the call this afternoon is number 123132, Susan Sperl, C.H. Robinson of L. v. Toad L. Dragonfly, Agenda Number 20. Counsel, if you're ready, you may proceed. May it please the Court, Justice Carmi, and members of the Court, my name is Don Sampin. I represent the C.H. Robinson entities. As we set forth in the briefing, there are basically two main issues before the Court. One is the application of the Contribution Act to vicariously liable defendants. And the second is the effect of one of the defendants' admissions of negligence with respect to its contribution obligations. If it's okay with the Court, I'll just address those issues in the order that we have them briefed. To start with, with respect to contribution, let me start with the purposes of the Contribution Act. I think it's important to take a look at those purposes because to the extent that the Contribution Act might be construed to be ambiguous or uncertain in application with respect to the facts of this particular case, then I think the Court can very legitimately fall back and look at the purposes of that Act and helping to construe the Act and how it applies here. And this Court has identified basically two purposes in a number of different cases. I think probably most recently in the Antonacelli case earlier this year. And those two purposes are, first of all, to equitably apportion damages among the defendants. And secondly, to encourage settlement. As far as apportioning damages is concerned, I suggest to the Court that it's simply unfair for one defendant to pay $28 million in damages in post-judgment interest and for the second defendant to go scot-free. When the basis for liability of both defendants, at least according to Dragonfly, is identical. Paying off a judgment should not involve a game of chicken whereby if you go first, you lose. And that's exactly the position that Dragonfly is advocating here. It is the kind of interpretation, moreover, that both defies common sense and violates any conceivable notion of equity. With respect to the second purpose, settlements, interpreting the statute to forbid contribution by or among vicariously liable defendants discourages settlements. And it does so because such a defendant, which might otherwise be interested in trying to resolve the entire underlying case prior to trial, would be discouraged from doing so if it knows that no portion of its settlement payment can be recovered by way of contribution. Why not just roll the dice? Maybe the jury will agree with that defendant that there is no agency relationship that would give rise to vicarious liability. So both purposes of the Act, I suggest, are furthered by allowing contribution in a case such as this. And this was the point made by Justice Schmidt in his dissent in the Third District. And neither Dragonfly nor the appellate court, at least as I read that opinion, have argued to the contrary. So let me then go on and talk about the Contribution Act itself. Mr. Stampin? Yes, sir. Is Dragonfly's position supported in any way by the language of 2B? Is their position that the Contribution Act should not apply supported by the language of 2B? I don't think it is, Your Honor. And I'll get into the reasons why that is. Okay. I mean, the Contribution Act basically says that a defendant that has paid a judgment in excess of its pro rata share of liability, it has a right of contribution among other defendants. Pro rata share of liability is defined in terms of relative culpability. And that's an important concept. CHR paid more than its pro rata share of common liability where it was 100% liable for the whole judgment? It paid more than its pro rata share of liability based upon the concept of relative culpability. Yes. Section 3 defines pro rata share of liability in terms of relative culpability. And in this case where both Robinson and Dragonfly, at least arguably Dragonfly, were vicariously liable, neither was at fault, so their culpability relative to each other was exactly the same. And that means that since Robinson paid off the entire judgment, it paid in excess of its culpability relative to Dragonfly. And it ought to be entitled to reconsideration. Would we have to take a bit of liberty with the statutory language to transfer relative culpability with pro rata share? I don't think so, Your Honor. I think Section 3 pretty well defines what is meant by pro rata liability. It talks about relative culpability. We're talking about culpability relative to the parties seeking or from whom is sought contribution. That's how I would construe that as relative culpability. It doesn't say actual culpability. It says relative culpability among the defendants. Mr. Sampson? Yes. Is there any language in the Contribution Act that says that it doesn't apply to vicarious liable defendants? There's nothing in the Contribution Act that says that it doesn't apply to defendants that are vicariously liable. The Act itself doesn't expressly address the subject of vicarious liability. It just talks about defendants and their relative culpability. The Appellate Court has disagreed with my interpretation, Your Honors, by rejecting that approach. It says that because the liability of these defendants was based upon vicarious liability, neither was at fault and, therefore, there is no basis to compare their respective fault as required by the Act. We disagree with that. We think that even as to two defendants who are vicariously liable and, therefore, neither one at fault, there is a basis to compare their fault. Neither one has fault and, therefore, their culpability relative to each other is the same and each ought to end up paying equal amount of the judgment. The Appellate Court went on to say, based primarily upon this Court's decision in the American National Bank case, that the Contribution Act only applies where the defendants are, quote, at fault in fact. And there is language in the American National Bank case. It talks about the Contribution Act applying to defendants at fault in fact. But the Court used it in that case in the context of trying to explain why the Contribution Act did not abolish quasi-contract-based implied immunity. And the Court ended up saying that implied immunity, I'm sorry, implied indemnity by a vicariously liable principle against an agent did, in fact, survive the Contribution Act. And I don't think this Court intended in American National Bank to say that the Contribution Act would never apply to vicariously liable defendants. And I say that in part based upon what this Court said in the American National Bank case. The Court, for the end of its opinion, said that were the interests of the vicariously liable principle were indistinguishable from the contribution interest of other tort feasors, that the Contribution Act would or should, in fact, apply. So I think that's at least one indication that the Act should not be strictly construed to apply only to defendants that are at fault in fact. I'd further point out that since the time of the American National Bank case, there have been at least two decisions that have indicated that the Act should apply to vicariously liable parties. One is a decision by this Court, the Ramsey case, and the other is the case from the Third District, the Equistar case. And in both cases, the Courts recognized the potential application of the Contribution Act to vicariously liable employers. So those cases are at least two examples of how the Act should apply to vicarious liability. I'd also point out that since the time of the American National Bank case in 1992, this Court has broadly construed the Contribution Act to apply generally. We point out in the brief, the Brogue v. Jane and Forklift case, where this Court indicated, and I'll just read this very brief passage from that case, it says that for application of the Contribution Act, quote, all that is required is that the person seeking contribution and the persons from whom contribution is sought be potentially capable of being held liable to the plaintiff in a court of law or equity, unquote. And in this case, not only were Robinson and Dragonfly capable of being held liable to tort plaintiffs in a court of law, but they were in fact held liable. And under this formulation, the Act should therefore apply. One other point that I would mention before turning to Dragonfly's admissions of negligence here has to do with Section 3 of the Contribution Act. The last two sentences indicate that where the obligation of one or more of the joint tortfeasors is uncollectible, the other tortfeasors have an obligation to share in the uncollectible obligation. The parties in this case have stipulated that the obligation of the driver, Ms. Henry, was uncollectible. The appellate court, in fact, found that Henry was 100% at fault. And if all those circumstances are true, then the Contribution Act should apply. Now, the appellate court here rejected that argument with respect to Section 3. It said that Henry's obligation was not, quote, uncollectible, unquote. The court said it was, quote, nonexistent, unquote. We disagree with that. Prior to the time that Robinson paid off this judgment, Ms. Henry had just as great an obligation to pay the $23 million damages plus post-judgment interest as did the other defendants. Her obligation was very clear. And the obligation that's being referred to in Section 3, so far as we can tell, is the obligation of the defendant to the tort plaintiffs. But even after Robinson paid off the judgment, Ms. Henry continued to have an obligation to Robinson. And Robinson's interests at that point were indistinguishable from the contribution interests of other tortfeasors. And under the American National Bank formulation, the Contribution Act should therefore apply. So those reasons summarize why we believe the Contribution Act should be found to apply here, even if Dragonfly is found to be vicariously liable. Let me turn then for a few minutes to talk about the second main issue in the case, and that has to do with Dragonfly's admissions of negligence. And the reason why this is important is that if Dragonfly was negligent, then we're no longer talking in this case about a vicariously liable defendant trying to seek contribution from another vicariously liable defendant. We're talking about Robinson, a vicariously liable defendant, seeking contribution from a defendant that has admitted its fault. And that changes the culpability analysis. Now, we've detailed in our opening brief the many admissions that Dragonfly made with respect to its negligence, and they're also summarized in the appellate court's opinion. At no time during the trial of the underlying case did Dragonfly couch its admissions of negligence in terms of vicarious liability. It never talked about vicarious liability. So for all of the arguments that you'll see in Dragonfly's brief in this court, contending that it was merely admitting vicarious negligence or vicarious liability, the arguments are not supported by the factual record here. Neither Dragonfly nor the appellate court, for all, appear to take issue with the fact that Dragonfly's statements before the trial court are judicial admissions. What they do say is that the statements are simply admissions of vicarious liability because, they further say, Robinson never came forward with evidence of independent negligence by Dragonfly. The problem with that position is that an admission of negligence, whether it is independent negligence or joint negligence, is still an admission of negligence. And negligence and fault are entirely inconsistent with vicarious liability. If you're negligent, you're at fault. And it doesn't matter if you're jointly negligent or if you're independently negligent. Neither the appellate court nor Dragonfly have cited any authority for the proposition that one who is jointly negligent doesn't have any negligence. I've never seen a case that says as such. The whole concept, I would suggest to this court, defies logic. The admissions of negligence were so clear to the trial court that the trial court read an instruction to the jury with Dragonfly's encouragement and consent to the effect that Dragonfly had admitted its negligence and that its negligence was approximate cause of the loss. And so the issue of its negligence was taken away from the jury. And the only issue that was tried by the jury in this case was the agency relationship between Robinson and Ms. Henry. And by removing the issue of negligence from the jury, the trial judge effectively entered judgment against Dragonfly based upon its negligence and based upon the fact that its negligence was the approximate cause of loss. And that judgment has never been appealed to any court. So where does that get us? Well, let me talk about the alternative formulations of contribution that we have set forth in our opening brief. We've set forth three alternatives that we think are possible. Dragonfly does not appear to take issue with any of those formulations. It continues to maintain its vicarious liability position, but so far as the amount of contribution is concerned, it doesn't appear to take a position at all. So if this court agrees with us that Dragonfly's liability here was direct and not vicarious, the court can readily decide the amount of contribution as a matter of law and without controversy. The first alternative we set forth is based upon the admissions of, quote, united negligence and, quote, same admission of negligence and liability, unquote, as between Dragonfly and Henry. And we ask this court to take Dragonfly at its word and to honor its request that it be found 100% at fault just like Henry and to award 100% contribution. If a defendant is going to make that kind of admission on the record before the trial court judge, it ought to expect to live with the results and the effect of its admission when it comes time for contribution. Mr. Sampson, that admission was in the context of the jury instruction that you referenced earlier or in another context? The language about the same admission of negligence and liability, that was in the context of an argument by Dragonfly's counsel that Dragonfly and Henry be listed on the same line on the verdict form. They wanted to be listed on the same line. Robinson objected to that, and the trial court overruled Robinson and listed them on the same line on the verdict form. That was the context in which that statement was made. And the earlier reference to the jury instruction, do you know without having to dig through your papers, what instruction was that, what number? I don't know the number. I might have the record citation readily available. Would that be of help to you? I don't want to waste your time. I've got a record citation. It's set forth on page 5 of our opening brief, Your Honor. Okay. Thank you. Let me just correct that. The instruction about negligence, admitting negligence and negligence being the proximate cause of the injuries is set forth on page 6 of our opening brief. And your time has expired. I see that it has. And on that note, I would simply ask this court to reverse the appellate court and to find that a vicariously liable defendant has as great if not greater contribution rights as a defendant who is found to be at fault. Thank you very much. Good afternoon. My name is Tom Burke. I represent the appellee, Total Dragonfly Express, a sole proprietorship. The Contribution Act has been the law in Illinois for roughly 40 years. The Act is largely the same now as it was when it was passed. It modifies the common law, but the Act also expressly confirms the continued vitality of the common law principle that where liability is joint and several, the plaintiff may recover the entire judgment from any tort fees. The statutory language that has been in place for 40 years, as well as the case law interpreting the Contribution Act, that formed the basis of the appellate court's decision in this case, is well settled. The appellate court correctly applied the law to the facts and its decision should not be disturbed. This is essentially a case of statutory construction. The rules of statutory construction require that the court first look at the statutory language as the best indication of the intent of the drafters. The language must be given its plain and ordinary meaning. Additionally, the statute should be evaluated as a whole, with each section construed in connection with every other section. The primary issue in this case is actually a very narrow one. In fact, the appellate court found the facts that created this issue were unique. And the issue is this. Can one principle seek contribution from another principle where both principles are only vicariously liable for the actions of the same agent and where that agent is the sole party at fault in fact? Robinson states the issue far too broadly in his brief. They state the issue as whether a right of contribution exists between vicariously liable defendants. That's a much broader issue than the issue before this court in this case, and that's an issue that the Illinois courts have addressed previously. And the answer is sometimes, depending upon the facts, a broad question like that gets a broad answer. The issue here is far more focused. The secondary issue is whether Dragonfly made a judicial admission and admitted independent, tortious acts or omissions that caused the plaintiff's injuries. The appellate court found that it did not. The appellate court's decision was correct, and its discretion on this issue should not be disturbed. On the contribution issue, Dragonfly's position boils down to the following logical propositions. First, in order for there to be contribution among joint tort casers, there must be an apportionment of fault. Conversely, where fault cannot be apportioned, there can be no contribution. Fault cannot be apportioned where there is only one tort caser at fault in fact, as we have here. Therefore, there is no contribution. The apportionment question was decided by the appellate court in the 2011 decision in this case, Spurl v. C.H. Robinson. This court subsequently denied a petition for me to repeal that decision. Liability cannot be apportioned in this case because there is a single culpable party, one party at fault in fact, which is D.N. Henry, the driver of the truck that caused this multi-vehicle accident and two deaths and some substantial injuries. The Contribution Act makes a clear and important distinction between liability and culpability. Section 2 of the Act states that the right of contribution exists only in favor of a tort caser who has paid more than its pro gratis share of the common liability, and that tort caser's total recovery in contribution is limited to the amount paid in excess of the pro gratis share. Mr. Burke, the way the dissenter, well, what the dissenter utilized in forming his dissent was another tool of statutory construction that the majority in the appellate court, according to the dissenting judge, Justice Schmidt, I believe, indicated that that was a hyper-technical interpretation of the Contribution Act and reached an absurd and unjust result, which is also a tool of statutory construction. Don't you think that at least the dissent's approach to where this is going at least makes some common sense, that there's a common sense ideal to it and it supports the notion of what is fair in light of the facts of this particular case? Well, I would respectfully disagree with Justice Schmidt on that, and for a couple of reasons. Number one, there is this, the implication there seems to be, and Mr. Sampson said it, that Dragonfly will get away scot-free, which is the term that he used. The reality is that there's a pending intercleaner. Dragonfly's insured tender debt insurance policy within months of this accident occurring into the intercleaner. That case is still pending. Robinson knew from day one what Dragonfly's coverage was because they had a contractual arrangement with Dragonfly. They were Dragonfly. They had a brokerage arrangement, which actually didn't come into play necessarily in this incident, but they knew what the coverage was. So they knew what the rules of the game were. They knew that the most they were ever going to get in the way of a contribution to a seller would be $1 million. Nonetheless, they proceeded to try the case. They proceeded to roll the dice. So when one looks at the fairness aspect of it, I think one has to look at how Robinson conducted themselves in this case as well. We offered the million dollars within months. It has not been apportioned yet, but it's still there. There would have been other ways to approach this. They took the approach that they took, and they paid the price for it. Liability. I think one of the important facts here is there's a distinction between liability and culpability. That's a very important distinction. I know it's interesting. Only Section 3 of the Act uses the term culpability. The rest of the Act refers to liability. Section 3 states that the proratisher of each torturer shall be determined in accordance with his relative culpability. The term culpability, the court long ago held in Heinrich v. Peabody, that culpability is measured by the extent to which a party's acts or omissions approximately caused the injury. In other words, culpability is based on fault in fact. It's based on someone acting, someone committing an act, someone committing a negligent act or omission. There's only one actor in this case, and that was Deanne Henry. She was the agent of both parties. In American National Bank, this court found that the Contribution Act is addressed only to the relative culpability of tortfeasors at fault in fact. Ms. Henry is the only culpable defendant. And notably, I think this is significant, too, in terms of what Justice Thomas addressed, Ms. Henry is the only culpable defendant. She's not a party to this appeal. In fact, a contribution claim was never brought against her by Robinson during the entire pendency of the case. They brought an indemnity claim, but they voluntarily dismissed it. So both Bragg and Fly and Robinson are vicariously liable for the conduct of Ms. Henry. Vicarious liability for an agent is an all-or-nothing proposition. You are either 100% responsible for the tortious conduct of that agent, or you are 0% responsible for the tortious conduct of that agent. Had the trial court here found that Henry was not the agent of Robinson, they would have had no liability. However, the jury found that there was an agency relationship that existed between Henry and Robinson. Bragg and Fly admitted its vicarious liability. Therefore, Henry, Bragg and Fly, and Robinson are 100% liable to the plaintiffs for the entirety of the judgments. Pursuant to Section 4 of the Act, which essentially codifies the common law, the plaintiff's common law right to collect a judgment from any defendant is not affected by the Act. Therefore, the plaintiffs could collect everything from Robinson if they chose to do so. I think the most extensive discussion of these principles was the court's discussion in American National Bank v. Columbus Cuneo. The main issue was whether the Contribution Act abolished implied indemnity, and the court had to discuss the Contribution Act in order to get to their decision in that case. They noted that Section 2 of the Act is available only to a tortfeasor who has paid more than his pro-ratus share of liability, that the statutory contribution scheme is based upon fault-based consideration, and that the Contribution Act is addressed only to the relative culpability of tortfeasors at fault in fact. The court further said that the other tortfeasors to which Section 3 of the Act occurs, the section using the term culpability, that section cannot be referring to blameless principles. It seems to me that that overrules more or less Justice Schmitt's argument regarding precarious tortfeasors. There are not precarious tortfeasors in the sense of them being precariously culpable. They are precariously liable but not precariously culpable, and that distinction, I think, is crucial here. Robinson wants the court to either ignore or effectively overrule its holdings in Heinrich and American National. If one accepts the premise that pro-ratus share is determined by a party's culpability, which is fault-based, then no other conclusion can be reached in a case such as this, where the facts are unique, where the sole actor, the sole party at fault in fact, is D.N. Henry. Just out of curiosity, you mentioned this in passing early on, I think in response to the fairness question. There was roughly a $28 million judgment, right, totally paid by Robinson, right? What's the status of the million coverage that Dragonfly had? It is pending in an interpleader in the circuit court of Will County. The judge handling that took the position that the interpleader would not be decided until all cases were reduced to that. Okay. All right. Thank you. You did say that. Thank you. Robinson's argument that the second, third, fourth sentences of Section 3 can be used to determine pro-ratus shares ignores the fact that the first sentence states exactly how they shall be determined in accordance with relative culpability. The language is clear. No substitute or alternative is needed. The fact that Henry's share was uncollectible, and the stipulation there was that she had no assets to satisfy the judgment. It was not that her share was uncollectible. I don't know if that makes a difference, but that was what the stipulation was. The more important fact was Henry is not a party to a contribution claim. She was never sued for contribution in the entire history of this case. As this court explained in American National Bank, she could have been sued for implied indemnity on a quasi-contractual basis, and she was, but that claim was voluntarily dismissed with prejudice by Robinson during the trial. They similarly voluntarily dismissed with prejudice during trial a contractual contribution claim which they had against Dragonfly, and this case goes back so far that it predates the anti-indemnity statute on transportation agreements. So that was a viable claim also, which they voluntarily dismissed. Robinson's equitable argument here is just a refusal to recognize the reality in tort litigation, which we've already touched on. Often the most substantial party is the target, and where the substantial party is 100% liable, it will be the party in whose judgment will be collected. The economic disparities between parties can sometimes lead to results which are difficult to reconcile with the Contribution Act's twin goals of encouraging settlement and equitable apportionment of damages. This court recognized that in Antoneccelli. It recognized it also several years ago in Henry v. St. John's. 211-17 partially ameliorated that issue, but that shortcoming or the addressing of that shortcoming was a function of the legislature, and the legislature addressed it. I'll get briefly to the point of admissions here. Robinson's second argument regarding the admissions allegedly made at trial, it seems to me that that is first and foremost an admission by Robinson that they need culpability because they're trying to manufacture culpability out of statements that were made at trial. It's a tacit admission that its interpretation of the Contribution Act is wrong, that there does not need to be fault in fact. If fault in fact is necessary, why even raise this issue? The statements that they contend are judicial admissions were remarks made in opening statement regarding negligence, and negligence is a term which could mean negligent conduct or the report of negligence. A question asked of Lou Anne Black, who was the sole proprietor of Dragonfly, regarding negligence. Some colloquies between counsel and the court outside the presence of the jury. In one of those, I note that our trial counsel, Kevin Casey, was very quick to say when the court suggested that we admitted all the negligence, he quickly said yes as to plaintiff's claims. We did not, and it's important, Dragonfly did not admit liability or fault as to the contribution claims. In fact, that was denied. They then pointed to the court's jury instruction, which is an IPI instruction, as a basis of an admission of liability or admission of culpable negligence by Dragonfly. They point to no independent negligent acts or omissions by Dragonfly made in the pleadings. They point to no admissions in the pleadings. They point to no responses to requests for admissions. They point to no admissions made in depositions, and they point to no express findings of specific negligent acts or omissions by the trial court in support of this argument. They cannot do that because none exist. The appellate court found that Robinson did not point to any specific allegations of negligent conduct by Dragonfly in any of the plaintiff's operative complaints that were not denied by Dragonfly. This court has repeatedly held that judicial admissions are deliberate, clear, unequivocal statements about a concrete fact within the court's knowledge. Here, Dragonfly admitted in the pleadings its vicarious liability for the negligent conduct of Henry. This is an admission of responsibility for the negligence of Henry. It is not an admission of tortious conduct. In the J.P. Morgan Chase v. Irk Foods case, this court found that a defendant who repeatedly referred to himself as a guarantor, both in the pleadings and in testimony, did not make a judicial admission for determining that he was a guarantor or surety, which was a central issue in that case. The alleged admissions in this case rise nowhere near that level. Robinson also laments that it was relying on those admissions and therefore did not present evidence to prove its counterclaim. This seems to ignore a pretty basic premise. If your opponent denies your contribution claim, you've got to present some evidence on it. And Robinson was free to present evidence and should have presented evidence because the contribution counterclaims were denied. Liability was admitted only as to the plaintiff's claims. This was clear from the pleadings. There was no admission of contribution liability. They were free to present evidence and obligated to do so unless they were going to rely on the plaintiffs to prove their case for them. The plaintiffs focused their case in this case solely on the issue of agency. Robinson's strategy was to focus on just that issue to the exclusion of other issues. The strategy backfired. They now complain that they were lulled into complacency by that strategy. I want to comment briefly. Counsel suggested that we did not respond to their 100 percent contribution argument, 75 percent, what I refer to as the mathematical gymnastics that they had in the closing pages of their brief. They argued they're entitled to 100 percent contribution, which is not contribution. That's indemnity. Indemnity is not permitted because they voluntarily dismissed their indemnity count against Dragonfly and also voluntarily dismissed their indemnity claim against Henry and never filed a contribution claim against her. They argue that it's 75 percent of the judgment. Again, the contribution judgment against Henry is zero because Henry was never sued for contribution. The indemnity claim against her was voluntarily dismissed. The plaintiff had a right to collect the judgment against Henry. Dragonfly did not. Robinson concludes with the assertion that it can't be the law of this state that a precariously liable defendant such as itself stands in the worst position to recover than the defendant found culpable. There are several problems with that statement. Dragonfly was not found culpable. They were found liable based on their admission of precarious liability. The jury didn't make any findings regarding Dragonfly other than the damage finding. Second, the only party seeking contribution in this case was Robinson since no other party sought contribution. How can it be determined whether Robinson is in a better position or a worse position to seek contribution than someone who's not seeking it? Robinson effectively wants this court to add additional sections to the Contribution Act governing contribution liability where an agent has more than one principle, such as happened here. This court should decline that proposal for the reasons that we've already discussed. Thank you. Thank you, counsel. May it please the court, just a few very brief points. Mr. Burke continues to advocate the position that his client admitted vicarious liability. Nowhere in the record is there an admission of, quote, vicarious, unquote, liability. It's an admission of negligence and an admission that the negligence was approximate cause of the loss. I'm not aware of any case where vicarious liability has been held to be a cause of loss. Vicarious liability is imposed as a matter of public policy, not as a cause of loss. That's what the trial court judge read to the jury. That's what Dragonfly admitted to in the trial court, and that's what the judgment of that court was. Justice Thomas asked about whether the dissenting justice's comments reflected what would be fair in this case. And I'm not sure that I heard a response from Mr. Burke other than to talk about related issues, but the answer to that is, of course, what Justice Schmidt said in the appellate court. More accurately, much more accurately reflects a sense of fairness and equity under the Contribution Act, which are the purposes of that act. Mr. Burke talked about a matter or two outside the record, at least I believe it's outside the record, having to do with the interpleader action, which is still pending in the circuit court of Will County. He indicated that the insurance company had interpleaded the policy limit and had tendered the policy limit within a month or two of the accident. The fact of the matter is the tender was not a proper tender, and that opens up the supplementary payment section of that policy. Now, this is all outside the record, but I just don't want this court to be misled that issues concerning the Carolina casualty policy are within the record. There's considerably more available so far as supplementary payments under that policy than the million-dollar limit at stake. So we're not just talking about a million dollars here, but even if we were and even if Dragonfly had no assets in this case, this court is more than just an error-correcting court. This court, of course, is a policy-setting, a precedent-setting court, and it sets policy and precedent not only under the Contribution Act, but with respect to many issues, legal issues statewide. And this case gives the court the opportunity to construe the Contribution Act in a way that is fair and as it should be applied in cases involving vicariously liable defendants. I don't think we've seen a case. I've not been able to find a case that is directly on point, and that's why I think this court was interested in taking the case in the first place and granting the petition for relief to appeal. Just look at my notes here. We talked about the alternative avenues of contribution in the latter pages of our briefing here. Mr. Burks seemed to suggest that because we were talking about Dragonfly's negligence, that we were somehow admitting that there had to be negligence by Dragonfly in order to recover contribution. We don't think that's the case. Even if Dragonfly, as we've argued in the first half of our brief, was vicariously liable and had no fault, I think Mr. Burke himself recognized the fact that the key concept here is relative culpability. That's how pro rata share is defined, and that's what we would ask this court to apply with respect to vicariously liable defendants. They are both equally culpable and, therefore, should each share in the same amount of damage. Thank you so much. Thank you. Case number 123132, Sperl et al. v. O'Dragonfly, will be taken under advisement as agenda. Mr. Sampson, Mr. Burke, we thank you for your arguments today. Excuse.